**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CYDNI DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | 3:25-CV-00354-MJH |
| | ) | |
| vs. | ) | |
| | ) | |
| PYRAMID HEALTHCARE, INC., | ) | |
| LINDSEY LAUDERMILCH, LINDSEY | ) | |
| HARKLESS, JOINTLY AND | ) | |
| SEVERALLY; | | |
| | | |
| Defendants, | | |

**<u>OPINION</u>**

On October 10, 2025, Plaintiff, Cydni Davis, filed an eleven-count Complaint, alleging

race discrimination, hostile work environment, and retaliation claims under Title VII of the Civil

Rights Act of 1964, Section 1981 of the Civil Rights Act of 1866, and the Pennsylvania Human

Relations Act ("PHRA"). Plaintiff also brings a retaliation claim and a claim for failure to pay

overtime under the Fair Labor Standards Act ("FLSA") against Defendants Pyramid Healthcare

Incorporated, Lindsey Laudermilch, and Lindsey Harkless. All of Plaintiff's claims arise out of

Plaintiff's employment with, and subsequent termination from, Defendant Pyramid's Detox and

Residential facility, located at 306 Penn Avenue, Suite A, Pittsburgh, PA 15221. (ECF No. 1).

Upon consideration of Plaintiff's Complaint, (ECF No. 1), Defendants' Motion to

Dismiss and accompanying brief, (ECF Nos. 15 & 19), and Plaintiff's Response in Opposition,

(ECF No. 20), and for the following reasons, Defendants' Motion to Dismiss will be granted in

part and denied in part.

## I.      Statement of Facts

Plaintiff, Cydni Davis, alleges that on May 13, 2024, she began her employment as a Dining Services Manager at Defendant Pyramid's detox and residential facility. (ECF No. 1, at ¶ 12). Plaintiff is a Black woman and was one of the facility's only Black members of management. (*Id*. ¶¶ 13–14). According to Plaintiff, throughout her employment, she was subjected to heightened scrutiny, disparate treatment, and unfair disciplinary actions that were not imposed on similarly situated white employees. (*Id*. ¶¶ 15, 19). She also claims that she was deprived of the same managerial support and resources afforded to her white peers. (*Id*. ¶ 22). She alleges she was assigned the smallest operating budget of all kitchen managers at other comparable Pyramid facilities, despite her facility serving an equal or larger volume of meals. (*Id*. ¶ 16). Defendant Lindsey Laudermilch, the manager Plaintiff alleges oversaw budget allocations, refused to adjust Plaintiff's budget, despite repeated requests by Plaintiff. (*Id*. ¶ 17). Plaintiff claims Defendants selectively enforced performance standards, by granting white managers discretion and leniency while penalizing Plaintiff for minor or fabricated infractions. (*Id*. ¶ 19). Plaintiff further claims she was denied coverage and assistance in performing her work, while white employees were consistently granted such assistance. (*Id*. ¶¶ 20–21).

Plaintiff claims that she was frequently required to work more than forty (40) hours per week during her employment. (ECF No. 1, at ¶ 62). However, Plaintiff claims Defendant instructed her to only record eight (8) hours in its timekeeping system, because she was a salaried employee. (*Id*. ¶¶ 62–63). Instead of using that system, Plaintiff alleges she was required to text her supervisor, Wasame Gamba ("Ms. Gamba"), her actual hours worked—a practice she claims was not required of white managers. (*Id*. ¶ 64).

On May 27, 2024, two weeks after beginning her employment, Plaintiff asked another employee, Angela Tetteris ("Ms. Tetteris"), about filing a grievance, because she had been subjected to disparate treatment by management. (ECF No. 1, ¶¶ 23–24). On or about June 30, 2024, Plaintiff reported to Annette Jewart ("Ms. Jewart") that an employee was dividing the kitchen, refusing to cooperate, and creating a hostile work environment. (*Id*. ¶ 25). Despite communicating her concerns orally and by text message, Plaintiff claims she was ignored. (*Id*. ¶¶ 25–27). Plaintiff alleges that by July of 2024, she had started complaining to her supervisors, including Defendant Laudermilch, regarding the excessive hours she was required to work. (*Id*. ¶ 68). Throughout July, Plaintiff claims she continued complaining to management about employee insubordination and other conflicts among staff. (*Id*. ¶¶ 27–28). Plaintiff claims that, instead of doing anything to address her complaints, Ms. Jewart issued Plaintiff a Final Written Warning, alleging performance deficiencies.  (*Id*. ¶ 29). Plaintiff claims this discipline was in retaliation for Plaintiff's protected complaints. (*Id*. ¶ 30).

On or about August 24, 2024, Plaintiff filed formal complaints with the Occupational Safety and Health Administration ("OSHA") and the Equal Employment Opportunity Commission ("EEOC"), alleging unsafe working conditions and racial discrimination. (ECF No. 1, ¶ 31). Two weeks later, Plaintiff emailed several supervisors, including Defendant Laudermilch, stating she felt "targeted" by them. (*Id*. ¶ 33).

Plaintiff claims that, on August 29, 2024, Defendant Laudermilch instructed an employee to replace the pre-approved meals with hot meals, in violation of the facility's approved meal plan. (*Id*. ¶ 36). Plaintiff refused to allow the substitution. (*Id*. ¶¶ 37–38). Plaintiff claims she was summoned by Defendant Laudermilch, Defendant Harkless, and another employee to a meeting the day after incident. (*Id*. ¶ 39). She alleges that, at the meeting, Defendants Laudermilch and

3

Harkless falsely accused Plaintiff of violating company policy and suspended her, pending an investigation into the August 29, 2024, incident. (*Id.* ¶¶ 39–42). During the meeting, Plaintiff claims that she asked permission to forward work-related documents to her personal email. (*Id.* ¶ 44). After receiving permission from Defendants Laudermilch and Harkless, she did so in front of both Defendants. (*Id.* ¶ 45). Plaintiff claims she was subsequently accused of violating HIPAA for forwarding herself these documents. (*Id.* ¶¶ 45–51). On September 20, 2024, Defendant Harkless sent Plaintiff a termination letter. (*Id.* ¶ 52). The termination letter cited "willful misconduct" related to the August 29, 2024 meal incident as the reason for Plaintiff's termination. (*Id.*).

Plaintiff alleges that, following her termination, Defendants continued retaliating against her. (ECF No. 1, at ¶ 55). Plaintiff claims that on or about October 1, 2024, the Director of Human Resources for Defendant Pyramid sent Plaintiff an email. (*Id.* ¶ 55). Said email demanded a notarized affidavit from Plaintiff, affirming that Plaintiff deleted the work-related documents she had emailed herself. (*Id.* ¶ 56). The email further stated that if such an affidavit was not provided, "further action may be taken." (*Id.*). Immediately afterwards, Plaintiff claims that HR sent her a contradictory message instructing Plaintiff to disregard the prior email. (*Id.* ¶ 57). Around this time, Defendant Harkless and another Pyramid employee threatened Plaintiff with a $10,000 fine for a purported paperwork error related to a client incident. (*Id.* ¶ 58). Plaintiff claims that these post-termination threats were intended to intimidate Plaintiff and dissuade her from taking legal action. (*Id.* ¶ 59). According to Plaintiff, this was in addition to inconsistent explanations for Plaintiff's termination in Defendant Pyramid's EEOC Position Statement. (*Id.* ¶ 54).

II.    **Relevant Legal Standard**

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson,* 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a prima facie case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs. Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d

902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail; but rather, whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] motive prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great Western Mining & Mineral Co.*, 615 F.3d at 175).

III.    **Discussion**

A. **Race Discrimination claims under Title VII (Count I), Section 1981 (Count IV), and the PHRA (Count VII)**

Defendants argue that Plaintiff has not pled sufficient facts to show any discriminatory animus or conduct based upon race. (ECF No. 19, at 8). Defendants further argue the Complaint is inadequate because of its generality. (*Id.* at 10). Defendants claim the Complaint only contains general allegations that white managers were treated differently than Plaintiff, without identifying the similarly situated individuals. (*Id*. at 10). Defendants also argue the Complaint is insufficient, because it claims Plaintiff was undermined and dismissed by other employees, but fails to give any examples. (*Id*.). Plaintiff argues that to establish a discrimination claim under the relevant statutes, she is not required to identify similarly situated individuals with the

specificity described by Defendants at this stage. (ECF No. 20, at 5). Plaintiff argues that allegations of differential treatment between protected and similarly situated non-protected employees suffice at the pleading stage. (*Id.*). Plaintiff further claims she met this standard by alleging facts showing that race was a motivating factor in the adverse actions taken against Plaintiff. (*Id.* at 5–6).

For Plaintiff to succeed on her Title VII claim,[1] she must establish that she: (1) belongs to a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 792–93 (1973). "Termination, failure to promote, and failure to hire all constitute adverse job actions." *Walker v. Centocor Ortho Biotech, Inc.*, 558 Fed. App'x. 216, 219 (3d Cir. 2014) (citing 42 U.S.C. § 2000e-2(a)(1)).

Plaintiff is a black woman, was qualified for her position, and her termination constituted an adverse employment action. The present issue, therefore, is whether Plaintiff has alleged facts that give rise to an inference of discrimination. According to Plaintiff's Complaint, she was one of the only African Americans working at Pyramid's Wilkinsburg facility. (ECF No. 1, at ¶ 14). Plaintiff alleges that she was subjected to heightened scrutiny and unfair disciplinary actions when compared to her similarly situated white counterparts. (*Id*. ¶¶ 15, 70). She alleges she was assigned the smallest operating budget of all kitchen managers even though her facility's meal service was equal in size or larger than other comparable facilities. (*Id*. ¶ 16). Individual

---

[1] Claims arising under Title VII, Section 1981, and the PHRA are all analyzed under the same analytical framework. *Qin v. Vertex, Inc.*, 100 F.4th 458, 470 (3d Cir. 2024). The Third Circuit has explained that discrimination actions brought under Section 1981 require the same elements of proof as a Title VII action. *Lewis v. Univ. of Pittsburgh*, 725 F.2d 910, 915 n.5 (3d Cir. 1983). PHRA discrimination claims are interpreted coextensively with Title VII claims. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 455 n.6 (3d Cir. 2006) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)).

Defendant Laudermilch controlled budget allocations and refused to adjust Plaintiff's budget, despite repeated requests. (*Id.* ¶ 17). Plaintiff alleges she routinely covered shifts to maintain operations, but was denied assistance when she needed coverage, including coverage for bereavement. (*Id.* ¶ 19). Plaintiff alleges she complained to another manager in the facility about feeling unsafe and targeted, claiming that her harassment stemmed from disparate racial treatment by management. (*Id.* ¶¶ 23–24). She also alleges that Defendant Pyramid failed to investigate or address Plaintiff's complaints, while promptly responding to white employees' concerns. (*Id.* ¶ 30).

At this stage, the Court must interpret the alleged facts in the light most favorable to the Plaintiff. Plaintiff alleged that similarly situated white employees were treated differently than her. Additionally, Plaintiff pled that she explicitly complained to other facility staff that she was being discriminated against because of her race. Such allegations, at this stage, are sufficient to establish race-based discrimination claims. As such, Defendants' Motion to Dismiss Plaintiff's Discrimination Claims at Counts I, IV, and VII will be denied.

### B. Hostile Work Environment claims under Title VII (Count II), Section 1981 (Count V), and the PHRA (Count VIII)

Defendants argue that Plaintiff's Complaint does not allege the type of extreme or severe conduct to establish any hostile work environment claim. (ECF No. 19, at 21). Defendants further contend that any factual allegations of workplace conflict are either ordinary work disputes and/or that Plaintiff fails to allege that such conflicts were based upon Plaintiff's race. (*Id.* at 18). Defendants also argue that the discrete acts alleged by Plaintiff happened in a short period of time; and thus, such acts do not constitute the type of ongoing conduct necessary to establish a hostile work environment claim. (*Id.*). Plaintiff argues that the harassment and

discrimination need not be extreme to constitute a hostile work environment. (ECF No. 20, at 8). Plaintiff further argues that the proper standard is severe *or* pervasive, and that overt racial harassment is not necessary to establish a hostile work environment. (*Id.*). Plaintiff contends that she pleads clear instances of discrimination, which, when considered alongside the disparate treatment between Plaintiff and white employees, sufficiently establish a pervasive pattern of discrimination. (*Id.* at 9).

To establish a prima facie case for hostile work environment under Title VII,[2] a plaintiff must show that (1) she suffered intentional discrimination because of her race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citing *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006)). Whether an environment is hostile requires consideration of the totality of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). The discrimination must be "because of" the employee's protected status or activity. *Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir. 2007). Facially neutral mistreatment may be combined with overt acts of discrimination to create a hostile work environment. *See Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 148–49 (3d Cir. 1999). But where facially neutral mistreatment alone is

---

[2] The elements of a racially hostile work environment under Title VII and Section 1981 are the same. *Ocasio v. Lehigh Valley Fam. Health Ctr.*, 92 Fed. App'x. 876, 880 n.3 (3d Cir. 2004) (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183–84 (4th Cir. 2001)). Additionally, Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts." *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

presented as evidence of a severe or pervasive discriminatory environment, it must be shown that "race is a substantial factor in the harassment, and that if the plaintiff had been white, she would not have been treated in the same manner." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir. 1996) (citing *Andrews v. City of Phila.*, 895 F.2d 1469 (3d Cir. 1990)).

The facts as pled show isolated incidents of discriminatory conduct. It is alleged that Plaintiff was assigned the smallest operating budget of all kitchens at other comparable Pyramid facilities; she was penalized for minor infractions; and she was not granted assistance when she needed coverage for extra shifts (ECF No. 1, at ¶¶ 16–22). Plaintiff's Complaint also alleges Plaintiff's coworker created a hostile work environment by "dividing the kitchen" and "refusing to cooperate." (*Id.* ¶ 25). This allegation is conclusory, and no inference that the coworker's behavior was motivated in part or in whole by Plaintiff's race can be drawn from the facts as pled. None of the discriminatory conduct was physically threatening or humiliating, nor does the Complaint allege an offensive utterance by any employee. Interpreting these allegations in the light most favorable to the plaintiff, the facts as pled cannot be said to have created an environment of pervasive or severe discriminatory conduct. Plaintiff's Complaint does not support that Plaintiff's race was a substantial factor in the isolated incidents of discrimination that she claims. While facially neutral mistreatment, when considered alongside other overt acts of racial discrimination, may constitute a hostile work environment, *Durham*, 166 F.3d at 148–49, Plaintiff admits that she has not pled any single instance of overt racial discrimination. (ECF No. 20, at 9). Plaintiff's Complaint fails to allege any overt acts of discrimination, and no inference can be drawn that race was a substantial factor in the isolated instances of disparate treatment alleged. Accordingly, Plaintiff has failed to state a claim for hostile work environment. Therefore, Defendants' Motion to Dismiss Plaintiff's claims for Hostile Work Environment, at

10

Counts II, V, and VIII, will be granted. Those counts are dismissed. As the Court cannot say amendment would be futile, Plaintiff will be granted leave to amend her complaint.

### C. Retaliation Claims under Title VII (Count III), Section 1981 (Count VI), the PHRA (Count IX), and the FLSA (Count XI)

Defendants argue that Plaintiff's complaint fails to plead sufficient facts of discriminatory animus or conduct based upon race to establish any retaliation claim. (ECF No. 19, at 8). Defendants argue that Plaintiff's allegations related to her retaliation claims are too general. (*Id*. at 10). Defendants further argue the Complaint fails to allege facts showing Plaintiff was terminated under the pretext of a false investigation, because Plaintiff does not allege facts showing why the investigation was false or how it was connected to Plaintiff's race. (*Id*.). Plaintiff argues that she has pled sufficient facts to establish all of her retaliation claims. (ECF No. 20, at 6). Plaintiff argues that she made formal complaints in good faith, and that the alleged facts create a reasonable inference that Plaintiff was retaliated against because of her protected actions. (*Id*. at 7).

To establish a *prima facie* case of retaliation under Title VII, and its parallel provisions under Section 1981 and the PHRA, a plaintiff must show that: (1) she was engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006).[3] To satisfy the third element, the protected activity must have been the "but-for" cause of the adverse action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). "But-for" causation may be

---

[3] These are also the elements which must be established under the FLSA. *Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807, 814 (E.D. Pa. 2015); see also *Preobrazhenskaya v. Mercy Hall Infirmary*, 71 Fed. App'x. 936, 939 (3d Cir. 2003) (claim brought under the FLSA analyzed using Title VII retaliation elements).

11

proven through circumstantial evidence such as temporal proximity, a pattern of antagonism, or inconsistent justifications for adverse action. *Carvalho-Grievous v. Delaware St. Univ.*, 851 F.3d 249, 260 (3d Cir. 2017). "Protected activity" in this context includes not only an employee's filing of formal charges of discrimination against an employer, but also "informal protests of discriminatory employment practices, including making comments to management." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015). A plaintiff need not prove the merits of the underlying discrimination complaint, but they must "act[] under a good faith, reasonable belief that a violation existed." *Moore*, 461 F.3d at 341 (quoting *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 701 (3d Cir. 1995)).

Plaintiff's informal complaints and formal filing of a charge against Defendant Pyramid constitute protected activities. (ECF No. 1, ¶¶ 23–35). Plaintiff's alleged termination constitutes an adverse employment action. (*Id*. ¶ 52). As to the third element, the facts as pled show a temporal connection between the protected activity and Plaintiff's alleged harassment and dismissal. (*Id*. ¶¶ 31–52). There were only six (6) days between Plaintiff's formal charge against Pyramid and Plaintiff's suspension pending investigation. (*Id*. ¶ 40). Plaintiff's Complaint sufficiently alleges facts that demonstrate the falsity of the investigation and charges against her. She contends that she followed approved facility policy related to meal plans, and that she was subsequently investigated for following company policy. (*Id*. ¶¶ 36–41). She also contends that she sought permission to forward work-related documents to herself, received such permission, and was subsequently accused of violating HIPAA for her approved behavior. (*Id*. ¶¶ 44–46). The facts in Plaintiff's complaint point towards a clear pattern of antagonism, as Plaintiff was routinely threatened and harassed, despite her compliance with requests and company policy. (*Id*. ¶¶ 39–58). These facts create a reasonable inference that discovery may reveal evidence of a

12

causal connection between Plaintiff's protected activity and her dismissal. As such, Defendants' Motion to Dismiss Plaintiff's Retaliation claims at Counts III, VI, IX, and XI, will be denied.

### D.  Claim for Failure to Pay Overtime under the FLSA (Count X)

Defendants argue that Plaintiff's claims for Failure to Pay Overtime under the FLSA should be dismissed. (ECF No. 19, at 22). Defendants claim that Plaintiff's claims are "barebones," and conclusory. (*Id*. at 22–23). Plaintiff argues that she has pled sufficient facts to establish an FLSA claim for failure to pay overtime. (ECF No. 20, at 15).

29 U.S.C. § 207(a) provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." "[T]o state a plausible FLSA overtime claim, a plaintiff must sufficiently allege [forty] hours of work in a given workweek as well as some uncompensated time in excess of the [forty] hours." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 242 (3d Cir. 2014) (quoting *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). Importantly, a plaintiff does not need to specify the exact dates and times that she worked overtime. *Id*.

Plaintiff's Complaint alleges that she routinely worked in excess of 40 hours during her employment. (ECF No. 1, at ¶ 62). She claims that when this happened, Defendants instructed her to record only eight (8) hours per shift because she was a salaried employee. (*Id*. ¶ 63). She alleges that Defendants required her to privately communicate her actual hours worked to her supervisor by text message. (*Id*. ¶ 64). Plaintiff has pled sufficient facts to state a claim for an

overtime violation under the FLSA. As such, Defendants' Motion to Dismiss Count X will be denied.

### E. Claims For Individual Liability for Failure to Pay Overtime under the FLSA (Count X)

Defendants argue that even if Plaintiff has stated a valid claim for failure to pay overtime, the claims against Defendant Laudermilch and Defendant Harkless should be dismissed, because the Complaint contains no allegations that either Defendant supervised Plaintiff or exercised substantial control over the terms and conditions of Plaintiff's work and pay. (ECF No. 19, at 23–24). Plaintiff argues that the Complaint alleges facts creating a reasonable inference that the individual Defendants exercised enough authority over Plaintiff to be individually liable. (ECF No. 20, at 16–17).

An individual may be held personally liable for FLSA overtime violations where the "economic reality" of their relationship with the plaintiff demonstrates that the individual exercised supervisory authority over the plaintiff and was responsible, in whole or in part, for the alleged failure to pay overtime. *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 153–154 (3d Cir. 2014) (quoting *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 417 (3d Cir. 2012)). In evaluating whether such a relationship exists, courts consider four non-dispositive factors: (1) whether the individual had power to hire and fire employees, (2) whether they supervised and controlled employee work schedules or conditions of employment, (3) whether they determined the rate and method of payment, and (4) whether they maintained employment records. *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 417 (3d Cir. 2012) (quoting *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984)).

14

Reading the Complaint in the light most favorable to the Plaintiff demonstrates that Defendant Laudermilch exercised some supervisory authority over Plaintiff. (ECF No. 1, ¶¶ 42, 68). The facts as alleged show that Defendant Laudermilch had some control over the conditions of Plaintiff's employment. Defendant Laudermilch is alleged to have controlled Plaintiff's budget allocations. (*Id.* ¶ 17). There is also an allegation that Plaintiff complained to Defendant Laudermilch about working excessive hours, without being paid. (ECF No. 1, at ¶ 67). These allegations are sufficient to state a claim against Defendant Laudermilch at the pleading stage.

Regarding Defendant Harkless, there is one factual averment in the Complaint that Defendant Harkless was a supervisor. (*Id.* ¶ 42). The averment is conclusory, and there are no well-pleaded facts to support said assertion. Nothing in the Complaint demonstrates that Defendant Harkless had any individual power to hire or fire Plaintiff. Nothing demonstrates that Defendant Harkless directly supervised Plaintiff, maintained employment records, controlled Plaintiff's work schedule, or determined the rate and method of Plaintiff's pay. Most importantly, the Complaint contains no allegations, and supports no reasonable inference, that Defendant Harkless was responsible for the alleged failure to pay overtime. Even when interpreted in the light most favorable to Plaintiff, the Complaint does not state a plausible FLSA failure to pay overtime claim against Defendant Harkless.

Therefore, Defendants' Motion to Dismiss Count X against Defendant Laudermilch will be denied; however, Defendants' Motion to Dismiss the claim against Defendant Harkless will be granted. As the Court cannot say amendment would be futile, Plaintiff will be granted leave to amend her Complaint.

**F. Exhaustion of Administrative Remedies as to Individual Defendants Laudermilch and Harkless Under the PHRA (Counts (VII, VIII, and IX).**

Defendants contend that Plaintiff's failure to identify the individual defendants in the caption of the charge is a failure to comport with the "naming" requirement of Section 959(a). (ECF No. 19, at 11). Defendants argue that Plaintiff has therefore failed to exhaust her administrative remedies against the individual defendants, such that her claims against them must be dismissed. (*Id*. at 12). Plaintiff argues that the "naming" requirement of Section 959 has been broadly construed such that it may be satisfied by naming a party in either the administrative caption or in the body of the charge. (ECF No. 20, at 12). Plaintiff further argues that she named both individual defendants in the body of her charge, and has therefore exhausted her administrative remedies against them. (*Id.* at 12–13). As such, Plaintiff claims she has comported with the requirements of Section 959(a) and properly filed suit against the individual defendants. (*Id*.).

"To bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997) (citing 43 P.S. §§ 959(a), 962). Section 959(a) requires a claimant to "state the name and address of the person, employer, labor organization or employment agency alleged to have committed the unlawful discriminatory practice complained of." The administrative requirements of Title VII and the PHRA are not "intended to serve as a stumbling block to the accomplishment of the statutory objective." *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977) (quoting *Evans v. Sheraton Park Hotel*, 503 F.2d 177, 183 (D.C. Cir. 1974)). Instead, their purpose is "to give notice to the charged party and provide an avenue for voluntary compliance without resort to litigation." *Glus*, 562 F.2d at 888. "A plaintiff's claims are preserved as long as she names the defendants in the body of the EEOC administrative complaint because it provides the defendants with the requisite notice that their conduct is under

16

formal review." *McInerney v. Moyer Lumber & Hardware Inc.*, 244 F. Supp. 2d 393, 399 (E.D. Pa. 2002); *see also Dreisbach v. Cummins Diesel Engines*, 848 F. Supp. 593 (E.D. Pa. 1994) (dismissing claims against individual defendants not named in the body of EEOC/PHRC charge but keeping claim against individual defendant named in the charge).

In the dual-charge Plaintiff filed with the EEOC and PHRC, Plaintiff only named Defendant Pyramid Healthcare Inc. in the caption of the charge; however, she named both individual defendants in the charge's body. *See, e.g.*, (ECF No. 15, Ex. A. at ¶¶ 6, 10–11, 27). To deny Plaintiff her day in court, simply because she placed the individual defendants' names in the wrong place while filing a *pro se* charge, would undermine the statutory objective of the PHRA. Accordingly, Plaintiff has exhausted all administrative remedies against the individual defendants. Defendants' Motion to Dismiss the PHRA claims, in Counts VII, VIII, and IX, against Defendant Laudermilch and Defendant Harkless, will be denied.

### G. Liability of Individual Defendants Under Section 1981 (Counts IV and VI).

Defendants argue that Plaintiff fails to establish any Section 1981 claims against the individual defendants, because Plaintiff's allegations against them are conclusory. (ECF No. 19, at 14). Plaintiff argues that she has alleged facts sufficient to show both individual defendants were knowing actors in the discriminatory actions taken against Plaintiff. (ECF No. 20, at 11).

Individual liability under Section 1981 may be imposed where a defendant "intentionally cause[s] an infringement of the rights protected by Section 1981." *Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001). This occurs when an individual defendant is "personally involved in the discrimination . . . or if they authorized, directed, or participated in the alleged discriminatory conduct." *Al-Khazraji v. St. Francis Coll.*, 748 F.2d 505, 518 (3d Cir. 1986).

17

### i.     Defendant Harkless

There are no allegations in the Complaint that Defendant Harkless acted unlawfully regarding the discrimination claims brought under Section 1981. Plaintiff's Complaint is bereft of any facts showing Defendant Harkless was personally involved in the discrimination against Plaintiff. Indeed, the Complaint fails to allege any interactions between Plaintiff and Defendant Harkless prior to the meeting at which Plaintiff was suspended on August 30. (ECF No. 1, at ¶ 39). Thus, Plaintiff has not pled sufficient facts to support her discrimination claim at Count IV against Defendant Harkless. As such, Defendants' Motion to Dismiss the Section 1981 discrimination claim against Defendant Harkless will be granted. As the Court cannot say amendment would be futile, Plaintiff will be granted leave to amend her complaint.

As regards Plaintiff's Section 1981 retaliation claim against Defendant Harkless, the facts alleged show that Defendant Harkless may have been an intentional participant in unlawful retaliatory action taken against Plaintiff. (ECF No. 1, at ¶¶ 37–59). Plaintiff alleges that Defendant Harkless was involved in summoning Plaintiff to the meeting at which Plaintiff was suspended. (*Id.* ¶ 39). It is alleged that Defendant Harkless accused Plaintiff of policy and HIPAA violations that she knew were false. (*Id*. ¶¶ 41, 44–46). Thus, Plaintiff has pled sufficient facts to support her retaliation claim against Defendant Harkless at Count VI. As such, Defendants' Motion to Dismiss the Section 1981 retaliation claim against Defendant Harkless will be denied.

### ii.     Defendant Laudermilch

As to Defendant Laudermilch, Plaintiff alleges sufficient facts to establish that Defendant Laudermilch participated in discriminatory activity. Plaintiff alleges that Defendant Laudermilch

assigned Plaintiff the smallest operating budget and then undermined Plaintiff by having a fellow employee request to modify the meal plan. (ECF No. 1, ¶¶ 16–17, 36). She then accused Plaintiff of violating the meal plan, when Plaintiff refused to make the requested modification, despite knowing such a substitution was not permitted. (*Id*. ¶¶ 39, 41). While these facts alone do not necessarily have a connection with Plaintiff's race, when considered within the totality of the alleged circumstances, it is plausible that Defendant Laudermilch authorized, directed, or participated in the alleged race-based discrimination against Plaintiff. As such, Defendants' Motion to Dismiss the Section 1981 discrimination claim against Defendant Laudermilch at Count IV will be denied.

As regards Plaintiff's Section 1981 retaliation claim against Defendant Laudermilch, the Complaint alleges facts showing Defendant Laudermilch actively participated in the retaliatory conduct taken towards Plaintiff. It is alleged Defendant Laudermilch summoned Plaintiff to the meeting where she was suspended. (*Id*. ¶ 39). It is further alleged she participated in the decision to suspend Plaintiff for a violation she knew was false. (*Id*. ¶¶ 41–42). For that reason, Defendants' Motion to Dismiss Plaintiff's retaliation claim against Defendant Laudermilch at Count VI will be denied.

### H. Basis for Individual Liability of Individual Defendants Under the PHRA (Counts VII and IX).

Defendants argue that Plaintiff has failed to plead facts supporting individual liability for Defendants Laudermilch and Harkless. (ECF No. 19, at 15). They argue that individual liability only attaches under the PHRA when a supervisor shares their employer's intent and purpose to discriminate and personally engages in direct acts of discrimination. (*Id*.). According to Defendants, neither individual defendant was a supervisor, nor does the Complaint allege facts

19

showing that either individual defendant shared Defendant Pyramid's intent and purpose to discriminate against Plaintiff. (*Id*. at 15–16). Plaintiff agrees with Defendants' characterization of the case law, but contends she has pled sufficient facts showing a supervisory position over Plaintiff and active each individual defendant's active participation in the discriminatory conduct. (ECF No. 20, at 13–14).

"Generally, the PHRA is applied in accordance with Title VII." *Dici v. Com. of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996). However, the PHRA contemplates individual liability beyond that permitted by Title VII. 43 P.S. § 955(e). Section 955(e) forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." *Id.* The Third Circuit has made clear that the individual liability imposed by Section 955(e) is limited to those in a supervisory role over a potential plaintiff. *Dici*, 91 F.3d at 553. The United States Supreme Court has defined "supervisor" in a Title VII claim to mean any employee "empowered by the employer to take tangible employment actions against the" Plaintiff. *Vance v. Ball State Univ.*, 570 U.S. 421, 450 (2013). Given the parallel provisions of Title VII, that definition applies here as well.

This Court has already determined that Plaintiff has sufficiently pled claims for discrimination and retaliation. The individual defendants' participation in the termination process opens the door to individual liability. The Plaintiff's Complaint alleges that Defendant Laudermilch and Defendant Harkless were involved in the suspension and termination of Plaintiff. (ECF No. 1, ¶¶ 39–42). Those are tangible employment actions, and each Defendant's alleged role in them suffices to establish a supervisory role over Plaintiff at the pleading stage. Furthermore, Plaintiff's Complaint alleges that Defendant Laudermilch and Harkless were

20

supervisors. (*Id.* ¶ 42). The Complaint also implies that Defendant Laudermilch began issuing disciplinary warnings to Plaintiff, further indicating a potential supervisory relationship. (*Id*. at ¶¶ 67–68).

As stated above, the Complaint alleges facts showing Defendant Laudermilch aided Defendant Pyramid's commission of the alleged unlawful practices against Plaintiff. As such, Defendants' Motion to Dismiss the PHRA discrimination claim against Defendant Laudermilch at Count VII will be denied. Defendants' Motion to Dismiss the PHRA retaliation claim against Defendant Laudermilch at Count IX will likewise be denied.

As stated above, the Complaint contains sufficient factual information to show Defendant Harkless aided in the alleged unlawful retaliation against Plaintiff. As such, Defendants' Motion to Dismiss the PHRA retaliation claim against Defendant Harkless at Count IX will be denied. However, the Complaint fails to allege any facts showing Defendant Harkless aided in the alleged unlawful discrimination perpetrated against Plaintiff. As such, Defendants' Motion to Dismiss the PHRA discrimination claim against Defendant Harkless at Count VII will be granted. As the Court cannot say amendment would be futile, Plaintiff will be granted leave to amend Count VII of her complaint.

## IV.    Conclusion

For the reasons stated in this Opinion, Defendants' Motion to Dismiss will be granted in part and denied in part as follows:

Defendants' Motion to Dismiss the discrimination claims against Defendant Pyramid at Counts I, IV, and VII will be denied. Defendants' Motion to Dismiss the discrimination claims against Defendant Laudermilch at Counts IV and VII will be denied. Defendants' Motion to

Dismiss the discrimination claims against Defendant Harkless at Counts IV and VII will be granted. The claims against Defendant Harkless will be dismissed without prejudice, and Plaintiff will be granted leave to amend those Counts.

Defendants' Motion to Dismiss the hostile work environment claims against all Defendants at Counts II, V, and VIII will be granted. Those claims will be dismissed without prejudice, and Plaintiff will be granted to amend those Counts.

Defendants' Motion to Dismiss the retaliation claims against all Defendants at Counts III, VI, IX, and XI will be denied.

Defendants' Motion to Dismiss the failure to pay overtime claim against Defendant Pyramid at Count X will be denied. Defendants' Motion to Dismiss the failure to pay overtime claim against Defendant Laudermilch at Count X will be denied. Defendants' Motion to Dismiss the failure to pay overtime claim against Defendant Harkless at Count X will be granted. The claim against Defendant Harkless will be dismissed without prejudice, and Plaintiff will be granted leave to amend that Count.

A separate Order to follow.

DATED: July 21, 2026                    BY THE COURT:

_____
MARILYN J. HORAN
UNITED STATES DISTRICT JUDGE

22